IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ASHLEY M. THOMAS                                                                              PLAINTIFF

      V.                              Civil No. 2:23-cv-02045-SOH-MEF

MARTIN O'MALLEY, Commissioner,
Social Security Administration                                                                DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      Plaintiff, Ashley Thomas, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

#### I.    Procedural Background

      Plaintiff protectively filed her application for DIB on September 11, 2020, alleging an onset date ("AOD") of February 3, 2020, due to degenerative disk disease ("DDD"), nerve root disorder, absent reflexes on the right side, and anxiety. (ECF No. 11, pp. 193-198, 225, 244-245). The Commissioner denied her applications initially and on reconsideration, and an administrative hearing was held before Administrative Law Judge ("ALJ") Harold Davis on February 9, 2022. (*Id*. at 34-62). The Plaintiff was telephonically present for the hearing and represented by counsel.

      On her alleged onset date, Plaintiff was 36 years old and possessed a high school education. (ECF No. 11, pp. 26, 64, 226). She had past relevant work ("PRW") experience as a cashier, lead, phone representative, and waitress. (*Id*. at 226, 233-240).

In an unfavorable decision dated March 1, 2022, ALJ Davis concluded that the Plaintiff's cervical DDD with radiculopathy and lumbar spinal stenosis were severe but did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 11, pp. 19, 22). Despite her impairments, he determined she retained the residual functional capacity ("RFC") to perform sedentary work requiring only occasional climbing, balancing, stooping, kneeling, crawling, and crouching. (*Id*. at 22). Based on the VE's testimony, the ALJ determined Plaintiff could perform work as a document preparer, escort vehicle driver, and addressing clerk. (*Id*. at 27).

On January 24, 2023, the Appeals Council denied Plaintiff's request for review (ECF No. 11, pp. 6-11), and she subsequently filed her Complaint (ECF No. 2) to initiate this action. Both parties have filed appeal briefs (ECF Nos. 13, 15), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing PRW; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder will only consider Plaintiff's age, education, and work experience in the light of her RFC if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

### III.  Discussion

Plaintiff raises four issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ erred at Step Two of the sequential analysis; (3) whether the ALJ properly assessed her subjective complaints; and (4) whether the ALJ's RFC determination is

supported by substantial evidence. Of particular concern to the undersigned is the ALJ's RFC analysis.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

In 2018, the Plaintiff was involved in a motor vehicle accident. (ECF No. 11, pp. 359-361, 383-385). There are no details regarding the accident, but records thereafter document worsening neck and back pain radiating into the right arm, hand, hip, posterolateral thigh, calf, and bottom of the foot with associated numbness, weakness, and tingling in the right hand.[1] Percocet and Gabapentin were initially prescribed after exams revealed tenderness in the neck, arm, wrist, and hand, and decreased grip strength in her right hand. (*Id*. at 425-440, 492-501, 505-510, 648-656, 661-666). In January 2020, x-rays of her cervical spine showed evidence of early DDD at the C5-6 level. (*Id*. at 543-544, 688-689). An MRI conducted in February 2020 showed a right foraminal

---

[1] Records also indicate the Plaintiff had a history of carpal tunnel syndrome although we cannot discern when said diagnosis was made. (ECF No. 11, pp. 492-496, 648-651).

4

disc protrusion with severe right neural foraminal stenosis at the C3-4 level; mild bilateral uncinate process hypertrophy and mild facet degeneration with mild right neural foraminal stenosis at the C4-5 level; a left paracentral disc protrusion effacing the ventral subarachnoid space at the C5-6 level with mild left facet hypertrophy and mild left neural foraminal and central canal stenosis; and a small central disc protrusion effacing the ventral subarachnoid space with mild central canal stenosis at the C6-7 level. Despite reports of cervical thoracic pain radiating into her right hand, nerve conduction studies were within normal limits. (*Id.* at 349-352, 496-501, 652-656). Her symptoms persisted, however, prompting Dr. Von Phomakay to increase her Gabapentin dosage, refer her to pain management, and keep her off work until she could be cleared by neurosurgery. (*Id*. at 501-505, 657-661). In addition, Dr. Jason Stansill prescribed Hydrocodone and Meloxicam. (*Id*. at 603-606).

In April 2020, Plaintiff reported suffering from significant posterior occipital headaches, a sharp pain radiating to the right side of her face, and difficulty walking to neurosurgeon, Dr. Katarzyna Czerniecka-Foxx ("Dr. Foxx"). (ECF No. 11, pp. 359-361, 383-385). An examination of the Plaintiff revealed decreased grip strength in the right hand, decreased flexion in the right hip and knee, and decreased dorsiflexion and plantar flexion in the right foot. Because she could not clearly assess the degree of neural foraminal compression from the MRI, Dr. Foxx ordered myelograms of Plaintiff's cervical and lumbar spine, as well as a CT scan of her cervical spine. Thereafter, Plaintiff advised Dr. Phomakay that her pain prevented her from performing her normal household chores. (*Id*. at 510-515, 666-670).

On May 26, 2020, myelograms of Plaintiff's lumbar and cervical spine showed a very mild mass effect to the anterior aspect of the thecal sac at the C3-4 and C4-5 levels, but no obvious nerve root cut off or other significant abnormalities; minimal disc space narrowing at the L3-4

level with some mild spondylitic ridging; and a possible mild annular bulging of the disc at the L5-S1 level. (*Id*. at 362-3, 390-392). Further, the CT scan of her cervical spine confirmed mild disc space narrowing with some anterior and posterior spurring a possible small broad-based left paracentral disk protrusion, mild relative narrowing of the canal, and minimal degenerative changes in the uncovertebral joints that may contact the cord at the C5-6 level; a right disc protrusion extending into the right lateral recess and possibly into the right foramen with probable narrowing of the right foramen and right lateral recess at the C3-4 level; and a small central broad based protrusion with mild central canal narrowing and alight anterior spurring at the C6-7 level. (*Id*. at 364-370, 393-398). Given Plaintiff's age, however, Dr. Foxx determined that neither a lumbar laminectomy nor cervical surgery would be advisable. (*Id*. at 357-358, 386-388, 551-553). Instead, she recommended pain management, physical therapy, and injections.

In early June 2020, Plaintiff advised Dr. Stansill that her pain remained a 5 on a 10-point scale with only 40 percent improvement in her quality of life since beginning medication. (ECF No. 11, p. 599-600). Approximately two weeks later, a pain specialist, Dr. John Swicegood, evaluated the Plaintiff for complaints of worsening neck, lower back, and right arm pain with associated weakness. (*Id*. at 402-407). On exam, he documented a slow, reciprocal gait; stiffness in the neck with a global decrease in the range of motion and tenderness to the bilateral paracervical muscles, midline spine, lower cervical spine, spinatus and trapezius muscles, levator scapulae, taut bands, bilateral lumbar and cervical facets, and mid lumbar spine; weakness in the right upper extremity with tenderness to palpation; and possible mild spasticity. Dr. Swicegood diagnosed cervical disk disorder at the C6-7 level with radiculopathy, DDD in the lumbar spine, motor neuron disorder, and lumbar spondylosis. He ordered an MRI of her brain to rule the possibility of a

6

tumor, and he administered Plaintiff's first cervical and lumbar epidural steroid injections ("ESI") at the C6-7 and L3-4 levels. The MRI was ultimately unremarkable. (*Id*. at 414).

Unfortunately, by July 2, 2020, the Plaintiff's pain had increased to an 8/10, prompting Dr. Phomakay to extend her short-term disability period. (*Id*. at 402-407, 597-598). He also noted rigidity and muscular tenderness in her neck with a poor range of motion and no grip strength in her right hand. Plaintiff's pain increased to a 10/10 in August, at which time she reported only a 10 percent increase in her quality of life with medication. (*Id*. at 593-594).

Dr. Swicegood administered a second ESI to the C7-T1 level in September 2020. (ECF No. 11, pp. 408-413, 571-576). At that time, her exam remained unchanged. A few weeks later, Dr. Phomakay noted posterior neck and low back tenderness as well as weakness in the right hand and arm with decreased grip strength. (*Id*. at 520-524, 675-680). He also reiterated his opinion that she could not return to work until cleared by neurology, due to daily pain and weakness in her right hand and the inability to use her right shoulder and hand. (*Id*. at 853). And, on September 24, 2020, Plaintiff rated her pain as a 10/10 and exhibited decreased flexion (could not touch her toes) with moderate discomfort during testing. (*Id*. at 591-592).

In mid-October 2020, she began physical therapy. (ECF No. 11, pp. 554-559, 564-569, 618-621). Thereafter, her pain reduced to a 5/10. (*Id*. at 587-590). After Dr. Swicegood administered her third ESI at the C7-T1 level in November, however, her pain again increased to 10/10. (*Id*. at 577-581, 585-586, 698-699).

On January 14, 2021, Plaintiff reported a slight decrease in pain, down to an 8/10, but she had also begun experiencing pain in her left shoulder and the left side of her neck. (ECF No. 11, pp. 696-697). And she remained unable to touch her toes. In February, Dr. Phomakay added

topical Diclofenac to her regimen, noting continued spinal tenderness and motor weakness. (*Id*. at 680-684, 790-796).

In early March, the Plaintiff followed up with Dr. Foxx's advanced practical registered nurse, Mariah Simmons, for complaints of worsening neck pain radiating into both upper extremities with associated weakness, a decrease in the manual dexterity in her right hand, and back pain radiating into both legs, the left side greater than the right. (ECF No. 11, pp. 738-745, 774-775, 777-779). Despite the short-term success of her ESIs, Plaintiff indicated that she had received no long-term pain relief. Nurse Simmons documented decreased strength in her biceps and triceps, a decreased grip on the left, and diminished reflexes in the left upper extremity, although x-rays of her left femur and knee were unremarkable. Nurse Simmons prescribed Mobic and a Medrol Dosepack for diagnoses of left leg pain, myopathy, and cervical radiculopathy. The following day, Dr. Phomakay increased her Gabapentin dosage, which did reduce her pain to a 5/10. (*Id*. at 797-808, 876-877).

On April 7, 2021, Plaintiff returned to Dr. Phomakay with complaints or worsening neck and elbow pain after getting dizzy the previous week and falling into a windowsill. (ECF No. 11, pp. 809-814). An exam revealed rigidity and muscular tenderness in the neck and elbow. Dr. Phomakay continued her medications and prescribed Antivert (Meclizine) to be taken as needed for dizziness.

In April and May, Plaintiff's pain remained at a 7/10. (ECF No. 11, pp. 872-875). Further, Drs. Stansill and Phomakay noted an unchanged exam. (*Id*. at 815-820, 872-875). On May 26, 2021, she was treated in the emergency room ("ER") for complaints of stiffness and cramping. (*Id*. at 760-768). An exam revealed diffuse tenderness in the paraspinal muscles, which was diagnosed as acute exacerbation of low back pain. The ER doctor prescribed Valium, Ketorolac,

Lidocaine patches, and Prednisone.  Two days later, when following up with Dr. Phomakay, Plaintiff complained of upper back and neck pain with muscle spasms for the previous three days, worsened by cleaning her floors.  (*Id*. at 821-827).  After noting an unchanged exam, Dr. Phomakay advised her to continue the Valium and Diclofenac gel and ordered physical therapy.

On June 1, 2021, Plaintiff complained of increasing pain in her lower back, hips, and neck. (ECF No. 11, pp. 828-845).  A physical exam revealed tenderness in the low back, hips, and cervical spine but x-rays of her hips revealed only mild degenerative changes in the left hip.  Dr. Phomakay prescribed Dexamethasone and advised her to continue the Gabapentin.  Two days later, her pain had increased to an 8/10.  (*Id*. at 870-871).  And, on June 25, Dr. Phomakay administered a steroid injection into her left hip, which resulted in a decrease in her pain.  (*Id*. at 868-871). Unfortunately, the pain relief was short lived, increasing back to 10/10 by July 29.  (*Id*. at 866-867).  Further, after initial pain improvement following physical therapy sessions, her pain increased to a 9/10 in late September.  (*Id*. at 862-863).  At that time, she stated that physical therapy had been "very hard" on her, and aquatic therapy was very painful.  And, despite her treatment, she remained unable to touch her toes.

On October 5, 2021, an MRI of Plaintiff's lumbar spine revealed mild congenital stenosis of the spinal canal, without significant spinal canal or foraminal stenosis. (ECF No. 11, pp. 883-887).  Thereafter, her pain averaged a 6.5/10 with a questionable gait and decreased flexion preventing her from touching her toes.

After reviewing this evidence, the ALJ concluded the Plaintiff could perform sedentary work with occasional posturals.  This assessment, however, fails to account for the Plaintiff's significantly decreased lumbar flexion, weakness in her right upper extremity, and neck impairment.  The ALJ is incorrect in his assertion that physical exams noted only decreased spinal

9

flexion and no deficits in the shoulder or neck. In addition to decreased flexion, exam findings frequently included tenderness in the posterior neck and upper back, rigidity/stiffness in the neck, weakness in the right upper extremity, and decreased grip in the right hand. (ECF No. 11, pp. 359-361, 505-510, 597-598, 601-606, 661-666, 856-865). These findings are bolstered by MRIs, CT scans, and myelograms showing disc space narrowing at the L3-4 level with some mild spondylitic ridging; a possible mild annular bulging of the disc at the L5-S1 level; mild disc space narrowing with some anterior and posterior spurring at the C5-6 level with a possible small broad-based left paracentral disk protrusion; a right disc protrusion extending into the right lateral recess and possibly into the right foramen at the C3-4 level with probable narrowing of the right foramen and right lateral recess; and a small central broad based protrusion at the C6-7 level with mild central canal narrowing and alight anterior spurring. (*Id*. at 362-370, 390-398).

Accordingly, remand in necessary to allow the ALJ to reconsider the Plaintiff's RFC. Due to the deterioration of the Plaintiff's condition between the time of the agency physician opinions and the ALJ's decision, we recommend that the ALJ be directed to obtain a consultative physical exam to aid him in determining the Plaintiff's work restrictions. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (holding further development of record is required when crucial issue is underdeveloped, or the available evidence does not provide an adequate basis to make an informed decision on the claim). Special attention should be paid to Plaintiff's ability to perform tasks involving her neck and upper extremities on a regular and continuing basis for eight hours a day, five days per week in the sometimes competitive and stressful conditions in which real people work in the real world.

## V. Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of July 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE